UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
MICHEL TOLIVER,                      :   10 Civ. 5354 (DAB) (JCF)
                                     :
          Plaintiff,                 :        REPORT AND
                                     :        RECOMMENDATION
     - against -                     :
                                     :
OFFICE-DEPT. OF CORRECTIONS N.Y.C.,  :
COMMISSIONER OF THE DEPT., CHIEF     :
OF THE DEPARTMENT, WARDEN OF         :
G.R.V.C., D.O.C. OFFICER BARRET,     :
D.O.C. OFFICER LOPEZ, D.O.C.         :
CAPTAIN PHIFFER – FEMALE, D.O.C.     :
OFFICER JOHN DOE, D.O.C. OFFICER     :
JOHN DOE, D.O.C. OFFICER JOHN DOE,   :
                                     :
          Defendants.                :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE DEBORAH A. BATTS, U.S.D.J.:

          Michel Toliver brings this action pro se pursuant 42 U.S.C. §
1983 ("Section 1983") against the New York City Department of
Correction ("DOC"), the DOC Commissioner (the "Commissioner"), the
DOC Chief of Department (the "Chief"), Warden Mulvey (the "Warden")
of the George R. Vierno Center ("GRVC"), Correction Officers
Barrett and Lopez, Correction Captain Phifer, and three
unidentified Correction Officers.  Mr. Toliver asserts that his
constitutional rights were violated while in DOC custody when
several DOC officers beat him and dragged him from a bus returning
to GRVC from an urgent care facility.  The defendants move for
partial summary judgment pursuant to Rule 56 of the Federal Rules
of Civil Procedure.  Mr. Toliver has filed an opposition, styled on
the docket a "Motion for an Answer of Plaintiff's Opposition to
Defendants' Motion for Summary Judgment," which attaches a proposed
amended complaint.  I construe the plaintiff's filing not only as

1

an opposition to the defendants' motion, but also as an application to amend his complaint.  For the reasons that follow, I recommend that the plaintiff's request to amend be granted in part and denied in part and the defendants' motion for partial summary judgment be granted in part and denied in part.

Background

The complaint focuses on an incident occurring on May 19, 2010, when the plaintiff was allegedly beaten by certain GRVC officials as he was disembarking from a bus returning from a prison urgent care facility.  The following facts are viewed in the light most favorable to the non-moving party.[1]

_____

[1] Rule 56.1 of the Local Rules of the Southern and Eastern Districts of New York ("Local Civil Rules") requires a motion for summary judgment to be accompanied by a statement of the material facts that the movant believes undisputed, with citations to admissible evidence.  Local Civil Rule 56.1(a) & (d).  The party opposing summary judgment must submit, with his opposition, a statement responding to each of the proposed undisputed facts, also with citations to admissible evidence.  Local Civil Rule 56.1(b) & (d).  The plaintiff did not submit a Local Rule 56.1 statement with his papers opposing the defendants' motion, though he recently proffered one that he alleges had been previously mailed.  This new submission fails to conform to Local Rule 56.1 in that it merely indicates that the plaintiff "opposes" certain of the defendants' factual statements and does not cite any evidence. Nevertheless, district courts have "broad discretion to determine whether to overlook a party's failure to comply with local court rules," and a court "may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file [a Local Rule 56.1] statement."  Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (quoting Monahan v. New York City Department of Corrections, 214 F.3d 275, 292 (2d Cir. 2000)).  Where the court's independent review of the record yields evidence contrary to a given assertion in the moving party's Local Rule 56.1 statement, or where a party fails to support an assertion by citing admissible evidence, the court may reject that assertion.  Id. at 73-74.  Conversely, where the moving party's Local Rule 56.1 statement is not contradicted by the court's review of the record, then the party's assertions will be "deemed admitted as a matter of law" for the purposes of a summary judgment motion.

Mr. Toliver was taken by bus to an urgent care facility to see a specialist. (Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Def. Rule 56.1 Statement"), ¶¶ 10–11). He wore a DOC-issued shirt, elastic pants, and a back brace designed to immobilize his spine and carried a cane. (Def. Rule 56.1 Statement, ¶¶ 4–5, 13). Mr. Toliver was the sole passenger on the bus. (Def. Rule 56.1 Statement, ¶ 14). On the way to the urgent care facility, the bus driver swerved to avoid a collision with a truck, causing Mr. Toliver to fall against a gate installed on the bus. (Def. Rule 56.1 Statement, ¶ 15). When the bus arrived at its destination, the plaintiff was physically unable to disembark; the driver therefore told the plaintiff to sit down in his seat, and the bus returned to GRVC. (Def. Rule 56.1 Statement, ¶ 19). The driver went into the receiving room, leaving the plaintiff on the vehicle. (Def. Rule 56.1 Statement, ¶ 20).

Correction Officer Okvist entered the bus and attempted to remove the plaintiff from his seat. (Def. Rule 56.1 Statement, ¶ 21). C.O. Okvist then threw the plaintiff to the floor and beat him on his arms, legs, and back. (Def. Rule 56.1 Statement, ¶ 22). Captain Phifer was outside the bus at the time. (Def. Rule 56.1 Statement, ¶ 26). Correction Officers Barrett and Lopez entered the bus and pulled the plaintiff off of the bus by his legs,

---

See, e.g., Chitoiu v. UNUM Provident Corp., No. 05 Civ. 8119, 2007 WL 1988406, at *1 & n.1 (S.D.N.Y. July 6, 2007) (granting summary judgment against pro se plaintiff who failed to respond to defendant's Local Rule 56.1 statement of facts). My review of the record did not reveal any facts to contradict the relevant facts in the defendants' Rule 56.1 Statement. Therefore, I have taken those facts recited below as true.

exposing his body and ripping his clothes.  (Def. Rule 56.1
Statement, ¶¶ 24-25, 29-30).  Once Mr. Toliver was outside the bus,
C.O. Okvist picked him up and threw him to the ground.  (Def. Rule
56.1 Statement, ¶ 28).  C.O. Okvist also ripped Mr. Toliver's
underwear off, leaving him naked.  (Def. Rule 56.1 Statement, ¶¶
32-33).  Captain Phifer said that she "did not want to see [him]
that way."  (Def. Rule 56.1 Statement, ¶ 34).  Thereafter, the
plaintiff was wrapped in a sheet and taken to his cell on a gurney
upon which his clothes had been placed.  (Def. Rule 56.1 Statement,
¶¶ 35-38, 40).  This incident caused Mr. Toliver neck and back
pain, scratches and bruises to his arms, a bloody nose, a swollen
jaw, and headaches.  (Def. Rule 56.1 Statement, ¶ 39).  The
plaintiff eventually saw medical staff following the incident.
(Def. Rule 56.1 Statement, ¶ 41).

On May 25, 2010,[2] Mr. Toliver filed this action pursuant to
Section 1983, alleging that the defendants violated his
constitutional rights.  The gravamen of the Complaint is the
alleged use of excessive force, although Mr. Toliver also asserts
a claim that Captain Phifer failed to intervene on his behalf
during the alleged beating and that she was deliberately

---

[2] Pursuant to the "mailbox rule," papers submitted by an
incarcerated person proceeding pro se are deemed filed on the date
that they are given to prison officials for mailing.  Houston v.
Lack, 487 U.S. 266, 271-72 (1988) (indicating that pro se inmate's
submission is deemed filed as of date given to prison officials);
Gibson v. City Municipality of New York, 692 F.3d 198, 201 n.3 (2d
Cir. 2012).

indifferent to his serious medical needs.[3]  The Commissioner, the Warden, the Chief, the DOC, Captain Phifer, and C.O.s Lopez and Barrett were served with a summons and complaint in late February or early March 2011.  The United States Marshals attempted to serve the summons on a "Corrections Officer Oakvest," but were unable to locate a DOC employee with that last name.  (Plaintiff's Opposition to Defendants['] Motion for Summary Judgment ("Pl. Memo.") at 36; Process Receipt and Return dated Feb. 17, 2011, attached as exhibit to Pl. Memo.).  On May 20, 2011, in a telephone conference with the Honorable Debra C. Freeman, U.S.M.J., who was previously assigned to this case, Mr. Toliver asserted that he had identified one of the John Doe defendants as "Oakvest.  I don't know if it is O-A-K-V-E-S-T or O-K-V-E-S-T."  (Transcript of Telephone Conference dated May 20, 2011 ("Conf. Tr.") at 5).  The Court indicated that the parties should focus on identifying John Doe defendants so that the Complaint could be amended and those defendants served.  (Conf. Tr. at 9-16).

On July 14, 2011, defendants' counsel sent a letter to the Court stating that, although Mr. Toliver had asserted that he had mailed a copy of a proposed amended complaint to Judge Freeman's

---

[3] It is unclear whether the plaintiff was a pretrial detainee at the time of the incident or had already been convicted. However, that distinction is immaterial, as the constitutional analysis is the same whether the appropriate provision is the Fourteenth Amendment, which protects pretrial detainees, or the Eighth Amendment, which protects convicted prisoners.  See Caiozzo v. Koreman, 581 F.3d 63, 70 (2d Cir. 2009) (deliberate indifference to serious medical needs claims); United States v. Walsh, 194 F.3d 37, 47-48 (2d Cir. 1999) (excessive force claims).

chambers, no such document had been served on the defendants.[4] (Letter of Alexandra Corsi dated July 14, 2011 ("Corsi Letter") at 1-2). The letter further stated that, once a copy of the document was received, counsel would inform the plaintiff within a week as to whether the defendants consented to the amendment. (Corsi Letter at 2). Mr. Toliver apparently failed to provide the defendants with a copy of the proposed amended complaint, and thus no amended complaint has been filed in this case. On September 14, 2012, the plaintiff filed a letter application seeking to add allegations relating to the liability of the City of New York pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978). I denied that application in light of the fact that the City of New York is not a party to this action. (Memorandum Endorsement dated Oct. 16, 2012 ("Oct. 16 Order")). As noted, in connection with his opposition to the defendants' motion for partial summary judgment, the plaintiff has filed a proposed amended complaint. ([Proposed] Amended Complaint ("Am. Compl.") and Supplemental Statement of Facts ("Supp. Facts"), attached as exhibit to Pl. Memo.). He seeks to add the City of New York as a defendant and to provide "deta[i]led facts to show Monell liability" (Pl. Memo. at 4, 14; Am. Compl. at 1; Supp. Facts at 4).

---

[4] Mr. Toliver had been warned that communications regarding his case should be sent to the Pro Se Office, rather than to chambers. (Letter of Noah H. Popp dated Aug. 27, 2010, attached as exhibit to Pl. Memo.). This directive is also included in the manual for pro se litigants that Mr. Toliver was sent on July 26, 2010. There is no indication that Judge Freeman required Mr. Toliver to send his proposed amended complaint to her chambers, although she did ask that he send her a copy of a letter describing the John Doe defendants. (Conf. Tr. at 9, 15).

In addition, he seeks to add Correction Officer Okvist as a defendant. (Pl. Memo. at 38; Am. Compl. at 1; Supp. Facts at 2-3).

Discussion

A.   Motion to Amend[5]

1.   Legal Standard

A motion to amend is generally governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Notwithstanding the liberality of the general rule, "it is within the sound discretion of the court whether to grant leave to amend." John Hancock Mutual Life Insurance Co. v. Amerford International Corp., 22 F.3d 458, 462 (2d Cir. 1994); accord Krumme v. WestPoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998). Regarding the use of this discretion, the Supreme Court has stated:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave should . . . be freely given.

Foman v. Davis, 371 U.S. 178, 182 (1962) (internal quotation marks omitted).

Where a proposed amendment adds new parties, the propriety of

---

[5] Under normal circumstances, I would issue a memorandum and order granting or denying a motion to amend. However, because the motion here is intertwined with the defendants' motion for summary judgment, it is more efficient to address both motions by way of report and recommendation.

amendment is governed by Rule 21 of the Federal Rules of Civil Procedure. <u>Momentum Luggage & Leisure Bags v. Jansport, Inc.</u>, No. 00 Civ. 7909, 2001 WL 58000, at *1 (S.D.N.Y. Jan. 23, 2001). That rule states that a party may be added to an action "at any time, on just terms." Fed. R. Civ. P. 21. In deciding whether to permit joinder, courts apply "'the same standard of liberality afforded to motions to amend pleadings under Rule 15.'" <u>Soler v. G & U, Inc.</u>, 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (quoting <u>Fair Housing Development Fund Corp. v. Burke</u>, 55 F.R.D. 414, 419 (E.D.N.Y. 1972)); <u>accord</u> <u>Smith v. P.O. Canine Dog Chas</u>, No. 02 Civ. 6240, 2004 WL 2202564, at *12 n.11 (S.D.N.Y. Sept. 28, 2004). Thus, joinder will be permitted absent undue delay, bad faith, prejudice, or futility. While a proposed amendment or joinder interposed in response to a motion to dismiss will be deemed futile if it would be subject to dismissal for failure to state a claim, where, as here, a summary judgment motion has been made, the court should "determine whether the amendment would be futile under the summary judgment standard." <u>Smith</u>, 2004 WL 2202564, at *12 (collecting cases). As discussed in more detail below, under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### 2. <u>City of New York</u>

As noted above, the City of New York is not a defendant in this case. This was made clear most recently by my order of

October 6, 2012, which denied the plaintiff's application to add allegations relevant to the City's potential liability under Monell. (Oct. 6 Order).

The defendants oppose Mr. Toliver's current attempt to add the City of New York as a defendant, arguing that the facts alleged in his opposition (including the proposed amended complaint and supplemental statement of facts) do not make out a Monell claim, and therefore the amendment would be futile. (Defendants' Memorandum of Law in Support of Their Motion for Partial Summary Judgment ("Def. Memo.") at 4-6). In order to prevail on a Section 1983 claim against the City of New York, the plaintiff must show that a municipal policy or custom caused the deprivation of his constitutional rights. Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1978). An "official policy" may be implemented through a "'policy statement, ordinance, regulation, or decision'" that is officially promulgated by a municipality's policy makers. Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003) (quoting Monell, 436 U.S. at 690). A "custom," for the purposes of municipal liability, must be so entrenched and well-established as to constitute a practice with the force of law. Patterson v. County of Oneida, New York, 375 F.3d 206, 226 (2d Cir. 2004).

Under Monell, a municipality cannot be held liable for the acts of its employees based on a doctrine of respondeat superior. Monell 436 U.S. at 691-95; see also Ricciuti v. New York City Transit Authority, 941 F.2d 119, 122 (2d Cir. 1991). Hence, "a

9

single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir.1998) (quoting Ricciuti, 941 F.2d at 123). However, a court may find that a municipal policy or custom existed if, when "faced with a pattern of misconduct[,] [it] does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007). Alternatively, liability may be established when a municipality's failure to train or supervise its employees is so severe as to amount to "deliberate indifference" to the constitutional rights of others. City of Canton v. Harris, 489 U.S. 378, 392 (1989).

As the defendants point out, Mr. Toliver does not assert that the constitutional violation took place pursuant to a formal policy or an act taken by an authorized policy-maker. (Def. Memo. at 5). Rather, Mr. Toliver asserts that the violation was part of a widespread pattern of misconduct that constitutes a custom or usage, and that the City failed to adequately train its employees.

a. Widespread Pattern of Misconduct

Monell's policy or custom requirement can be satisfied based on a pattern of misconduct that is "sufficiently persistent or widespread" as to constitute a custom of which a supervising policy-maker must have been aware. Reynolds, 506 F.3d at 192.

Courts have found sufficient facts to plausibly infer a widespread pattern where multiple similar incidents occur "over a

long, continuous time period." <u>See</u> <u>Michael v. County of Nassau</u>, No. 09 CV 5200, 2010 WL 3237143, at *4 (E.D.N.Y. Aug. 11, 2010); <u>see, e.g.</u>, <u>Castilla v. City of New York</u>, No. 09 Civ. 5446, 2012 WL 3871517, at *4 (S.D.N.Y. Setp. 6, 2012) (multiple detectives and officers helped individual defendant abuse plaintiff over many hours and in many locations, including at police precinct); <u>Banqura v. County of Nassau</u>, No. 07 CV 2966, 2009 WL 57135, at *4 (E.D.N.Y. Jan 7, 2009) (correction officers' failures to "regularly patrol the tiers/areas to which they were assigned" suggest a pattern of misconduct).

The plaintiff lists five prior instances and one subsequent instance of alleged misconduct, many of which form the basis for other lawsuits:[6]

1. Repeated transfers in the middle of the night between two City of New York correctional facilities -- the Vernon C. Bain Center in Bronx County and the Robert N. Davoren Complex on Rikers Island (Pl. Memo. at 7-8);

2. An assault by a DOC captain, which apparently occurred on or around December 11, 2009 (Pl. Memo. at 8; Def. Memo. at 10); <u>see also</u> <u>Toliver</u>, 2012 WL 5426658, at *1 (describing the factual allegations in <u>Toliver v. New York City Department of Corrections</u>, No. 10 Civ. 822 ("the 822 Action"));

3. The issuance of infractions on January 24, 2010, in retaliation for Mr. Toliver's filing of the 822 Action (Pl. Memo. at 7); <u>see also</u> <u>Toliver</u>, 2012 WL 5426658, at *1-2 (describing the alleged retaliation);

4. The destruction of documents and assault, apparently by

_____

[6] As I have noted in prior opinions, Mr. Toliver has filed at least 17 actions in this court since 2010. <u>See</u> <u>Toliver v. NYC Department of Corrections</u>, No. 10 Civ. 5804, 2012 WL 5426658, at *8 n.11 (S.D.N.Y. Oct. 10, 2012) (listing cases); <u>Toliver v. Department of Correction -- NYC</u>, No. 10 Civ. 6666, 2012 WL 3999316, at *1 n.2 (S.D.N.Y. April 3, 2012) (same).

one or more DOC officials, which occurred in early May 2010 (Pl. Memo. at 7); see also Report and Recommendation at 3-5, <u>Toliver v. City of New York</u>, No. 10 Civ. 5806 (S.D.N.Y. Sept. 25, 2012), Docket no. 84 (describing alleged incident on May 11, 2010);

5.   An assault by a correction officer, which occurred around May 10, 2010 (Pl. Memo. at 7); <u>see also</u> Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 at 1-3, <u>Toliver v. City of New York</u>, No. 10 Civ. 5803 (S.D.N.Y. May 24, 2012), Docket no. 75 (describing alleged incident on May 10, 2010).

6.   An assault, including sodomy and attempted drowning, which occurred on May 20, 2010 (Pl. Memo. at 9).

Two of these incidents -- the repeated transfers and the retaliatory infraction reports -- are not sufficiently similar to that alleged in this case (or to each other) to establish any pattern. The remaining incidents all charge various DOC officials with the use of excessive force.

Whether or not these allegations would establish a pattern of using excessive force on inmates in the context of a motion to dismiss, the proposed amendment would not withstand a motion for summary judgment. Mr. Toliver includes few details of these instances of alleged excessive force, although some can be gleaned from documents filed in his other actions in this Court. More importantly, however, he has adduced no <u>evidence</u> concerning these incidents. Thus, the record here consists merely of the plaintiff's allegations regarding a number of occurrences of excessive force. That is not sufficient for an action at this late stage, with discovery closed and a motion for summary judgment pending. <u>See, e.g.</u>, <u>Delrosario v. City of New York</u>, No. 07 Civ. 2027, 2010 WL 882990, at *7 (S.D.N.Y. March 4, 2010) (granting

summary judgment for defendants on <u>Monell</u> claim where plaintiff proffered only allegations from another lawsuit and inadmissible newspaper article as evidence of widespread practice); <u>Griffin v. City of New York</u>, 287 F. Supp. 2d 392, 396 (S.D.N.Y. 2003) (granting summary judgment to defendants on <u>Monell</u> claim where plaintiff "failed to come forward with even a scrap" of evidence of municipal custom although he had ample opportunity during discovery to explore pertinent facts).  Therefore, I recommend denying as futile Mr. Toliver's request to add the City of New York as a defendant and add the proposed allegations as to custom.

Even if the proposed amendment were not futile, however, I would recommend denying the plaintiff leave to amend on the grounds of undue delay and prejudice.  <u>See</u> <u>Foman</u>, 371 U.S. at 182.  This case was filed more than two years ago and Mr. Toliver has known the facts upon which he would base his proposed <u>Monell</u> claim since before he filed the action.  He has provided no explanation for his failure to include these allegations in his original complaint or failure to move previously to amend his complaint.[7]  Of course, delay alone does not require denial of a motion to amend.  <u>See</u> <u>Block v. First Blood Associates</u>, 988 F.2d 344, 350 (2d Cir. 1993)

---

[7] The excuse that Mr. Toliver attempted to amend by sending a copy of a proposed amended complaint to Judge Freeman is unavailing.  As noted above, Mr. Toliver was made aware that the defendants had not been served with any proposed amended complaint in the July 14, 2011 letter from defendants' counsel.  (Corsi Letter at 1-2).  It appears that Mr. Toliver failed to send the defendants a copy of the document even after this warning, and no further attempt was made to request leave to amend the complaint until July 2012, well after discovery had closed.  (Letter of Michel Toliver dated July 10, 2012, at 1).

(stating that in Second Circuit, delay without bad faith or undue prejudice is not sufficient reason to deny leave to amend). However, allowing the plaintiff to join the City of New York and plead a <u>Monell</u> claim at this juncture would unduly prejudice the defendants.  Discovery is closed and a motion for summary judgment has been filed.  Allowing Mr. Toliver to amend as he has proposed would require discovery to be re-opened so that the parties could investigate and produce evidence regarding whether there was a widespread pattern of misconduct that caused the violation alleged here.  Such a "disruption" in the orderly course of these proceedings "constitutes sufficient prejudice to defendants to justify denial of the motion." <u>Wesley v. Muhammad</u>, No. 05 Civ. 5833, 2010 WL 1541536, at *3 (S.D.N.Y. April 13, 2010) (denying <u>pro se</u> plaintiff's motion to amend when it was filed after discovery ended and motion for summary judgment had been filed and amendment would require re-opening discovery to probe "area of factual inquiry that . . . had been beyond the scope of [the original] claims"); <u>see also, e.g.</u>, <u>Clark Oil Trading Co. v. Amerada Hess Trading Co.</u>, No. 90 Civ. 1856, 1993 WL 300039, at *11-12 (S.D.N.Y. Aug. 4, 1993) (finding prejudice where proposed amendment would require re-opening discovery to investigate new theory of liability).

### b.   <u>Failure to Train</u>

A municipality will be liable for constitutional violations caused by a failure to train "only where 'the failure to train amounts to deliberate indifference to the rights' of those with

whom the municipal employees will come into contact." <u>Walker v.</u>
<u>City of New York</u>, 974 F.2d 293, 297 (2d Cir. 1992) (quoting <u>City of</u>
<u>Canton</u>, 489 U.S. at 388).  Deliberate indifference "require[s] that
city policymakers ma[ke] a 'deliberate choice . . . from among
various alternatives' not to fully train employees." <u>Id.</u> (ellipsis
in original) (quoting <u>City of Canton</u>, 489 U.S. at 389).  There are
"three requirements that must be met before a municipality's
failure to train or supervise constitutes deliberate indifference":

> First, the plaintiff must show that a policymaker knows
> to a moral certainty that her employees will confront a
> given situation.  Thus, a policymaker does not exhibit
> deliberate indifference by failing to train employees for
> rare or unforeseen events.
>
> Second, the plaintiff must show that the situation
> either presents the employee with a difficult choice of
> the sort that training or supervision will make less
> difficult or that there is a history of employees
> mishandling the situation. . . .
>
> Finally, the plaintiff must show that the wrong
> choice by the city employee will frequently cause the
> deprivation of a citizen's constitutional rights.

<u>Id.</u> at 297-98 (internal quotation marks and citations omitted).
The Supreme Court has recently emphasized that deliberate
indifference is a "stringent standard of fault," and that "[a]
pattern of similar constitutional violations is ordinarily
necessary to demonstrate deliberate indifference for the purpose of
failure to train." <u>Connick v. Thompson</u>, __ U.S. __, __, 131 S. Ct.
1350, 1360 (2011) (internal quotation marks omitted).

Given these requirements, it should be clear that Mr.
Toliver's failure to train claim is no more successful than his
claim of a widespread pattern of misconduct claim.  Again, he has

provided no evidence of a pattern of similar constitutional violations, but rather only unsupported general allegations. Moreover, as above, allowing amendment of the Complaint to add a failure to train claim against the City of New York would prejudice the defendants, who would need to re-open discovery to investigate this new theory of liability. I therefore recommend that Mr. Toliver's request to amend the Complaint to add the City of New York as a defendant under a theory of <u>Monell</u> liability be denied.

    2.   <u>C.O. Okvist</u>

The plaintiff's request to amend to add C.O. Okvist as a defendant is another matter. The facts as developed are sufficient to state a viable excessive force claim against him, so the amendment would not be futile. Moreover, the concerns of prejudice outlined above do not apply to this amendment.[8]

    The defendants claim they would be prejudiced by such an amendment because they would have to engage in further discovery, as well as investigation to determine whether Corporation Counsel may represent C.O. Okvist. (Def. Reply at 7 n.4). Their argument is unconvincing. The defendants have known that the plaintiff sought to identify and add C.O. Okvist as a defendant since May 2011, if not before. (Conf. Tr. at 5). He is an alleged participant in the single incident that underlies this action, the

---

[8] The defendants' request to brief the issue of amendment more fully (Defendants' Reply Memorandum of Law in Support of Their Motion for Partial Summary Judgment ("Def. Reply") at 7 n.4) is denied. The defendants do not suggest that there are any grounds other than delay and prejudice that would require denial of Mr. Toliver's request, and I cannot think of an argument that would change my opinion on this issue.

details of which should already have been fully explored in discovery. Indeed, it is unfathomable that C.O. Okvist's participation in the incident has not been investigated, as it forms a basis of the claim that Captain Phifer violated Mr. Toliver's civil rights by failing to intervene while C.O. Okvist was allegedly beating him. Thus, this is not a case where a plaintiff seeks to add a defendant whose presence would introduce an entirely new theory of liability or an unrelated claim. Rather, it is a situation in which the proposed amendment arises out of the same facts as those that have already been investigated, thus requiring little or no new discovery. See, e.g., Augustus v. MSG Metro Channel, 217 F. Supp. 2d 458, 464-65 (S.D.N.Y. 2002) (allowing amendment of complaint when new claim arose out of same set of facts as existing claims and would therefore require no new discovery); Arias v. Mutual Central Alarm Services, Inc., 182 F.R.D. 407, 418 (S.D.N.Y. 1998) ("[T]he issues raised by the proposed amendments would require no additional discovery. Moreover, they really raise nothing new. Defendants therefore would not be prejudiced."). Likewise, there should be little additional investigation required to determine whether Corporation Counsel will represent C.O. Okvist. Without a showing of prejudice, Mr. Toliver's delay in requesting amendment is an insufficient ground on which to deny the request. See Block, 988 F.2d at 350. I therefore recommend that Mr. Toliver's request to

amend the complaint to add C.O. Okvist as a defendant be granted.[9]

B.   Summary Judgment

1.   Legal Standard

The defendants' motion for partial summary judgment seeks dismissal of all claims against DOC; all claims against supervisory defendants the Commissioner, the Chief, and the Warden; all claims against Captain Phifer; and all state law claims.  In addition, the defendants argue that the Commissioner, the Chief, the Warden, and Captain Phifer are entitled to qualified immunity.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); accord Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011).  A dispute regarding a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009), and a material fact is one that "'might affect the outcome of the suit under the governing law,'" Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008) (quoting Anderson, 477 U.S. at 248).  "In deciding whether a genuine dispute

---

[9] Mr. Toliver also states that he has identified another potential defendant, C.O. Murrell. (Pl. Memo. at 34).  However, he includes no detail about this person's alleged participation in the incident at the core of this action.  To the extent that he seeks to amend the complaint to add C.O. Murrell as a defendant, I recommend that the request be denied as futile.  See Smith, 2004 WL 2202564, at *12 (stating that, when a motion for summary judgment has been made, futility of amendment should be analyzed under the Rule 56 standard).

exists, a court must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" <u>Seeman v. Local 32B-32J, Service Employees Union</u>, 769 F. Supp. 2d 615, 620 (S.D.N.Y. 2011) (quoting <u>Dallas Aerospace, Inc. v. CIS Air Corp.</u>, 352 F.3d 775, 780 (2d Cir. 2003)).

The moving party bears the initial burden of identifying those portions of the record that demonstrate "the absence of a genuine issue of material fact," <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), following which the opposing party must come forward with specific facts showing a genuine issue for trial.  The parties can support their claims with discovery materials, stipulations, affidavits, or other evidence, <u>see</u> Fed. R. Civ. P. 56(c)(1)(A); however, "'only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment,'" <u>Presbyterian Church of Sudan v. Talisman Energy, Inc.</u>, 582 F.3d 244, 264 (2d Cir. 2009) (quoting <u>Raskin v. Wyatt Co.</u>, 125 F.3d 55, 66 (2d Cir. 1997)).  Thus, the parties cannot rely on "'conclusory allegations or unsubstantiated speculation'" to support or defeat a motion for summary judgment.  <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 554 (2d Cir. 2005) (quoting <u>Fujitsu Ltd. v. Federal Express Corp.</u>, 247 F.3d 423, 428 (2d Cir. 2001)).

Where a litigant is <u>pro</u> <u>se</u>, his pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest.'"  <u>Fulton v. Goord</u>, 591 F.3d 37, 43 (2d Cir. 2009) (quoting <u>Green v. United States</u>, 260 F.3d 78, 83 (2d Cir. 2001)).

Nevertheless, proceeding <u>pro</u> <u>se</u> does not relieve a litigant from the usual requirements of summary judgment, and a <u>pro</u> <u>se</u> party's "bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." <u>Geldzahler v. New York Medical College</u>, 746 F. Supp. 2d 618, 620 n.1 (S.D.N.Y. 2010) (internal quotation marks omitted).  But even where the plaintiff has received notice pursuant to Local Rule 56.2 regarding the requirements for opposing a summary judgment motion, the court may conduct "'an assiduous review of the record' to determine if there is any evidentiary support for his assertions of fact that do not cite to evidence and to determine if there are any other material issues of fact." <u>Id.</u> (quoting <u>Lee v. Coughlin</u>, 902 F. Supp. 424, 429 (S.D.N.Y. 1995)).

   2.   <u>Department of Correction</u>

   The defendants argue that the DOC, as an agency of the City of New York, is not a suable entity.  (Def. Memo. at 3).  They are correct.  <u>See, e.g.</u>, <u>Carpenter v. Department of Correction</u>, No. 10 Civ. 8087, 2012 WL 1604878, at * 3 (S.D.N.Y. May 8, 2012).  The plaintiff concedes as much.  (Transcript of Deposition of Michel Toliver dated Oct. 27, 2011 ("Dep. Tr."), portions attached as Exh. A to Declaration of Joseph A. Marutollo dated Sept. 7, 2012 ("Marutollo Decl."), at 194; Pl. Memo. at 4).  Therefore, the DOC should be dismissed from this action.

   3.   <u>Supervisory Liability</u>

   The claims against the Commissioner, the Chief, and the Warden (the "supervisory defendants") fail because these defendants were

not personally involved in the alleged deprivation of Mr. Toliver's constitutional rights.   Personal involvement by a supervisory official in any alleged constitutional violation is a prerequisite to liability under Section 1983. Hernandez v. Keane, 341 F.3d 137, 144-45 (2d Cir. 2003); Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999). "[T]he plaintiff must allege sufficient facts to demonstrate that defendants were personally or directly involved in the violation, that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.'" Harris v. Westchester County Department of Corrections, No. 06 Civ. 2011, 2008 WL 953616, at *9 (S.D.N.Y. April 3, 2008) (alteration in original) (quoting Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001)); see Murray v. Koehler, 734 F. Supp. 605, 606 (S.D.N.Y. 1990) ("A supervisory official is not liable under section 1983 by virtue of his subordinate's actions; rather, he must be shown to have 'some personal responsibility.'" (quoting Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989))).   "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a [supervisory official] in a § 1983 claim." Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) (quoting Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985)).

Mr. Toliver does not allege that any of the supervisory defendants were present during the May 19, 2010, incident. (Dep. Tr. at 199-201).   Of course, direct participation is not the only way that supervisory liability may attach.   Liability may attach to a supervisor's conduct where (1) the official "'after being

informed of the violation through a report or appeal, failed to remedy the wrong'"; (2) the official "'created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom'"; (3) the official "was grossly negligent in supervising subordinates who committed the wrongful acts'"; or (4) the official "exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.'" Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 127 (2d Cir. 2004) (alteration in original) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)). While there is disagreement within this district as to whether all of these categories of supervisory liability remain viable after Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009), and the Second Circuit has yet to address this issue, the majority view is where "'the constitutional claim does not require a showing of discriminatory intent . . . the personal involvement analysis set forth in Colon v. Coughlin may still apply.'" Shepherd v. Powers, No. 11 Civ. 6860, 2012 WL 4477241, at *10 (S.D.N.Y. Sept. 27, 2012) (quoting Sash v. United States, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009)); see also Bertuglia v. City of New York, 839 F. Supp. 2d 703, 722-23 (S.D.N.Y. 2012) (considering five categories of supervisory liability in retaliation case); Malik v. City of New York, No. 11 Civ. 6062, 2012 WL 3345317, at *14-15 (S.D.N.Y. Aug. 15, 2012) (same).

The plaintiff here claims that the supervisory defendants are liable because they knew of the incident and failed to act to

remedy the situation. (Dep. Tr. at 194-99, 201; Pl. Memo. at 18-19). However, he fails to demonstrate that the supervisory defendants had "actual or constructive notice of unconstitutional practices and demonstrated gross or deliberate indifference by failing to act." McGee v. Pallito, No. 1:10-cv-11, 2011 WL 6291954, at *20 (D. Vt. Aug. 3, 2011) (quoting Merriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989); Murray v. Pataki, No. 9:03-cv-1263, 2007 WL 956941, at *4 (N.D.N.Y. March 29, 2007).

### a.    The Commissioner

Mr. Toliver claims that the Commissioner was on notice of the incident at issue here, as well as previous incidents dating back to December 2009. However, the plaintiff has presented no evidence that this is so. Instead, he asserts that he received a letter from the Commissioner's office directing him to file a grievance. (Dep. Tr. at 195). That letter has not been produced, and it is unclear whether the Commissioner or one of her staff members signed it. (Dep. Tr. at 198). Even if there were such a letter, it would not save Mr. Toliver's claim against the Commissioner. A letter from a supervisory defendant delegating the matter to other prison officials is insufficient to establish supervisory liability. Gonzalez v. Sarreck, No. 08 Civ. 3661, 2011 WL 5051341, at *15 (S.D.N.Y. Oct. 24, 2011); Amaker v. Goord, No. 98 Civ. 3634, 2002 WL 523371, at *16 (S.D.N.Y. March 29, 2002). Accordingly, I recommend that the summary judgment be granted as to claims against the Commissioner.

b.   The Chief

Mr. Toliver claims that the Chief was on notice because a number of people telephoned the Chief's office to inform him and because Mr. Toliver received a letter directing him to file a grievance.[10]   (Dep. Tr. at 198-99).   Again, Mr. Toliver has presented no evidence of these alleged phone calls or of this letter.   In any case, as above, the letter would not be sufficient to defeat the defendants' motion.   Accordingly, I recommend that the summary judgment be granted as to claims against the Chief.

c.   The Warden

Mr. Toliver claims that he communicated, both in person and by letter, to the Warden the details of a number of the incidents that form the basis for his lawsuits. (Dep. Tr. at 201; Pl. Memo. at 19-22).   He offers no details as to when or how these communications took place, and, as above, the plaintiff has presented no evidence of such communications.   Moreover, Mr. Toliver has presented no evidence that the Warden was deliberately indifferent; rather, he merely alleges that the Warden failed to transfer him to another facility.   (Pl. Memo. at 19).   These general, unsupported allegations are not sufficient to establish the Warden's personal involvement in the alleged constitutional deprivations at issue here.   Accordingly, I recommend that the summary judgment be granted as to claims against the Warden.

---

[10]   It is unclear from Mr. Toliver's deposition testimony whether he received a letter from the Chief's office as well as from the Commissioner's office.   I will assume for the purposes of this aspect of the motion that a letter came from the Chief's office.

4.   <u>Captain Phifer</u>

Mr. Toliver asserts that Captain Phifer was aware of the beating that took place on the bus but did not intervene to stop it.  (Pl. Memo. at 26).  Specifically, he states that Captain Phifer arrived at the bus after C.O. Okvist had entered it and remained outside the bus while the assault took place.  (Dep. Tr. at 144-45, 152-53; Def. Rule 56.1 Statement, ¶ 26).  Captain Phifer was still outside the bus after the plaintiff was pulled off the vehicle by C.O.s Barret and Lopez and subsequently picked up and thrown down by C.O. Okvist.  (Dep. Tr. at 155; Def. Rule 56.1 Statement, ¶ 31).  Seeing Mr. Toliver naked outside the bus, Captain Phifer stated that she "did not want to see [him] that way." (Dep. Tr. at 155; Def. Rule 56.1 Statement, ¶ 34).  A sheet was therefore fetched and the plaintiff was taken on a gurney back to his housing unit.  (Def. Rule 56.1 Statement, ¶¶ 35, 37).

a.   <u>Failure to Intervene</u>

"A correctional officer has an affirmative duty to intercede on behalf of an inmate when [s]he witnesses a violation of that inmate's [constitutional] rights by . . . her fellow officers." <u>Kee v. Hasty</u>, No. 01 Civ. 2123, 2004 WL 807071, at *26 (S.D.N.Y. April 14, 2004).  Liability attaches "only . . . if '(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene.'" <u>Tavares v. City of New York</u>, No. 08 Civ. 3782, 2010 WL 234974, at

25

*4 (S.D.N.Y. Jan. 19, 2010) (quoting Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008); see also Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is a question of fact," unless the evidence shows that "a reasonable jury could not possibly conclude otherwise." Anderson, 17 F.3d at 557.

The defendants assert that Captain Phifer cannot be liable here because she did not have a realistic opportunity to intervene, given that she was outside the bus and the "scene of the incident was 'dark,' suggesting that it would be difficult to observe any activity on the bus." (Def. Memo. at 14). The defendants have failed to demonstrate that the evidence is such that no reasonable jury could conclude that Captain Phifer had sufficient time to intervene. First, the fact that Captain Phifer was not on the bus does not require the conclusion that she was unaware of the alleged beating taking place on the vehicle. Mr. Toliver testified at his deposition that he verbally protested C.O. Okvist's treatment on the bus while Captain Phifer was outside. (Dep. Tr. at 145). Captain Phifer was apparently outside the bus while the contretemps continued. Thus, it is plausible that Captain Phifer heard the protest or the beating as it was going on. Moreover, at least part of the treatment about which the plaintiff complains took place when he was no longer on the vehicle: after Mr. Toliver had been pulled off of the bus, C.O. Okvist allegedly picked him up and threw him on the ground. (Dep. Tr. at 146; Def. Rule 56.1

Statement, ¶ 28). Captain Phifer may well have seen this part of the incident. Finally, the defendants have presented no evidence establishing the duration of the incident. There is therefore a genuine issue of material fact as to whether Captain Phifer had an opportunity to intercede and prevent the harm. See, e.g., O'Neill v. Krzeminksi, 839 F.2d 9, 11-12 (2d Cir. 1988) (holding that, even if there was insufficient time for defendant to intercede when plaintiff was struck with "three blows . . . in [] rapid succession," there was issue of fact for jury as to whether defendant failed to attempt to prevent subsequent dragging of plaintiff across the floor). The fact that Captain Phifer eventually had Mr. Toliver covered with a sheet and transported on a gurney to his housing unit does not change this conclusion. See Tavares, 2010 WL 234974, at *4 (rejecting defendants' argument that "an officer who eventually intercedes to protect a prisoner has fulfilled his duty to intervene" in light of evidence that defendant watched plaintiff being assaulted for "at least three minutes").

The defendants state that Captain Phifer is entitled to qualified immunity because "reasonable officials could disagree as to whether [her] actions violated plaintiff's constitutional rights." (Def. Memo. at 21). To decide whether a defendant is entitled to qualified immunity, a court must determine two questions: (1) whether the facts alleged by the plaintiff make out the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation. See

Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009) (holding that
court may address questions in any order).  Although it is Captain
Phifer's "burden at summary judgment to show the nonexistence of a
clearly established right and [her] entitlement to qualified
immunity," Palmer v. Richards, 364 F.3d 60, 67 (2d Cir. 2004), she
provides no detailed argument as to why she would be entitled to
qualified immunity if she were aware of the alleged beating, had an
opportunity to intervene to prevent it, and failed to do so.  In
any case, it is clear that such a duty was clearly established in
this Circuit by, at the latest, 1988.  See O'Neill, 839 F.2d at 11
(holding, in 1988, that "[a] law enforcement officer has an
affirmative duty to intercede on behalf of a citizen whose
constitutional rights are being violated in his presence by other
officers").  Her claim for qualified immunity on this issue should
be rejected.  I therefor recommend that the defendants' motion for
summary judgment be denied on the plaintiff's failure to intercede
claim against Captain Phifer.

      b.   Deliberate Indifference to Medical Needs

     Mr. Toliver argues that Captain Phifer violated his
constitutional rights by failing to have him taken to the clinic
immediately after the incident.  (Pl. Memo. at 26, 29).  "To
establish an unconstitutional denial of medical care, a prisoner
must prove deliberate indifference to [his] serious medical needs."
Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (alteration in
original) (internal quotation marks omitted).

     The test for deliberate indifference has both objective and

subjective prongs.  Id.  First, the alleged deprivation must be objectively "'sufficiently serious.'"  Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  "This standard contemplates a [showing by the prisoner that his medical need was] a condition of urgency, one that may produce death, degeneration, or extreme pain." Lucas v. McCoy, No. 10 Civ. 9611, 2011 WL 6005164, at *2 (S.D.N.Y. Nov. 30, 2011) (alteration in original) (internal quotation marks omitted).  When the basis for the deliberate indifference claim is that treatment was delayed, "the relevant concern is the 'particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition.'"  Rodriquez v. City of New York, 802 F. Supp. 2d 477, 482 (S.D.N.Y. 2011) (quoting Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003)).  The actual medical consequences attributable to the delay in care are usually "'highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm.'" Id. (quoting Smith, 316 F.3d at 187).

Second, the prisoner must show that the charged official acted "with a sufficiently culpable state of mind," meaning that the "official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Hathaway, 37 F.3d at 66 (citing Wilson, 501 U.S. at 298, and Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 66 (internal

quotation marks omitted).

Here, Mr. Toliver has not shown that any harm -- let alone sufficiently serious harm -- was caused by the delay between the time of the incident and his later visitation by medical staff, which he admits took place that same evening. (Dep. Tr. at 147). He does, of course, complain that he suffered neck and back pain, scratches and bruises to his arms and legs, a bloody nose, a swollen jaw, and headaches. (Dep. Tr. at 180; Pl. Memo. at 28). However, these injuries are attributable to the alleged assault; the plaintiff makes no attempt to connect them to the alleged delay in medical attention.   For this reason, I recommend that the defendants' motion for summary judgment on the plaintiff's claim for deliberate indifference to serious medical needs be granted. See Rodriquez, 802 F. Supp. 2d at 482 (granting defendants' summary judgment on plaintiff's deliberate indifference claim where "plaintiff presents no evidence that his condition worsened as a result of the three-day delay between his request and receipt of medical attention").

### 5.   State Law Claims

To the extent that the complaint can be read to allege state law claims, those claims should be dismissed for lack of jurisdiction.  New York law requires that, in order for an action to be brought against the City of New York or any employee, a notice of claim must be served on the municipality witin 90 days after the claim arose.  N.Y. Gen Mun. Law §§ 50-e(1)(a) & 50-k(6). "Federal courts do not have jurisdiction to hear state law claims

30

brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim." Dingle v. City of New York, 728 F. Supp. 2d 332, 348-49 (S.D.N.Y. 2010). "The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement." Horvath v. Daniel, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006).

Mr. Toliver has not met this burden. Although he states that he filed something called a "Notice of Intent" with the City of New York, he has not submitted a copy so that I can determine whether it was sufficient and timely under New York law. (Declaration of Michel Toliver dated Sept. 27, 2012 ("Toliver Decl."), attached as exhibit to Pl. Memo., at 1-2). Therefore, I recommend that the plaintiff's state law claims be dismissed for lack of jurisdiction.[11]

Conclusion

For the foregoing reasons, I recommend that the defendants' motion for partial summary judgment (Docket no. 81) be granted in part and denied in part. Specifically, I recommend that motion be granted as to (1) all claims against the Department of Correction, (2) all claims against the Commissioner, the Chief, and the Warden, (3) all state law claims, and (4) the deliberate indifference claim against Captain Phifer. I recommend that the motion be denied as

---

[11] The plaintiff's request for an extension of time to submit this alleged Notice of Intent to the Court (Toliver Decl. at 3) is denied. Mr. Toliver states that the document is in his possession (Toliver Decl. at 2), and he has had sufficient time to submit it.

to the failure to intervene claim against Captain Phifer.    In
addition, I recommend that the plaintiff's motion to amend (Docket
no. 87) be granted to the extent that it adds C.O. Okvist as a
defendant, and denied in all other respects.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d)
of the Federal Rules of Civil Procedure, the parties shall have
fourteen (14) days from this date to file written objections to
this Report and Recommendation.    Such objections shall be filed
with the Clerk of the Court, with extra copies delivered to the
chambers of the Honorable Deborah A. Batts, Room 2510, and to the
chambers of the undersigned, Room 1960, 500 Pearl Street, New York,
New York 10007.    Failure to file timely objections will preclude
appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          December 11, 2012


Copies mailed this date:

Michel Toliver
10-A-4565
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

Joseph A. Marutollo, Esq.
Assistant Corporation Counsel
100 Church Street
New York, New York   10007


32